IN THE UNITED STATE DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LOUIS GUILLEN, SR., AND LOUIS GUILLEN, JR. | § § § | |
| *Plaintiffs* | § § | CIVIL ACTION NO. 3:24-cv-1413 |
| v. | § § § | JURY TRIAL REQUESTED |
| U-HAUL COMPANY OF TEXAS, U-HAUL INTERNATIONAL, INC. AND U-HAUL HOLDING COMPANY COLLECTIVELY d/b/a U-HAUL MOVING AND STORAGE | § § § § § § | |
| *Defendants* | | |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, LOUIS GUILLEN, SR. AND LOUIS GUILLEN, JR., hereinafter referred to by name or as Plaintiffs, and complain of U-HAUL COMPANY OF TEXAS, U-HAUL INTERNATIONAL, INC. AND U-HAUL HOLDING COMPANY COLLECTIVELY d/b/a U-HAUL MOVING AND STORAGE (hereinafter collectively "U-HAUL"), and for cause of action would respectfully show unto the Court as follows:

### I. PARTIES

1.1    Plaintiff Louis Guillen, Sr. is an individual residing in Deerfield Beach, FL.

1.2    Plaintiff Louis Guillen, Jr. is an individual residing in Deerfield Beach, FL

1.3    Defendant **U-HAUL CO. OF TEXAS d/b/a U-HAUL MOVING AND STORAGE,** is a domestic company doing business in Texas at its physical address at: 7107 C F Hawn Freeway, Dallas Texas 75217. This Defendant's principal office is located at 920 Meyers

Road Grand Prairie, TX 75050 and may be served with a citation by serving its registered agent for service CT Corp System, 1999 Bryan Street, Ste. 900, Dallas, Texas 75201-3136 and/or wherever found.

1.4    Defendant **U-HAUL INTERNATIONAL, INC.,** is a foreign corporation doing substantial business in the State of Texas. U-Haul International is organized and incorporated under the laws of the State of Nevada with its principal place of business located at 2727 N. Central Avenue, Phoenix, AZ 85004. At all times pertinent to this Complaint, U-Haul International was (and remains) the parent corporation exercising control over corporate subsidiaries, Including U-Haul of Texas. In that role, U-Haul International was (and remains) the entity responsible for promulgating the policies, procedures, guidelines, practices, protocols and/or training to be followed by all U-Haul corporate subsidiaries, including U-Haul Company of Texas and its employees and/or agents. U-Haul International, either alone and/or by and through its wholly owned, consolidated and/or affiliated subsidiaries, transacts business in the State of Texas and derives substantial revenue from business in the State of Texas. U-Haul International maintains registered agent in the State of Texas and may be served by delivering summons and the complaint to its registered agent, CT Corp System, 1999 Bryan Street, Ste. 900, Dallas, Texas 75201-3136 and/or wherever found.

1.5    Defendant **U-HAUL HOLDING COMPANY D/B/A AMERCO D/B/A U-HAUL CO. OF TEXAS D/B/A U-HAUL MOVING AND STORAGE**, is a foreign corporation doing substantial business in the State of Texas. U-Haul Holding Co. is organized and incorporated under the laws of the State of Nevada with its principal place of business located at 2727 N. Central Avenue, Phoenix, AZ 85004. At all times pertinent to this Complaint, U-Haul

Holding Company, operating through its subsidiary and/or tradename Amerco, was (and remains) the parent corporation exercising control over corporate subsidiaries, including U-Haul of Texas and conducted business in concert with co-Defendants under for the U-Haul Moving and Storage facility located at 7107 C F Hawn Freeway, Dallas Texas 75217. In that role, U-Haul Holding Company was (and remains) the entity responsible for promulgating the policies, procedures, guidelines, practices, protocols and/or training to be followed by all U-Haul corporate subsidiaries, including U-Haul Company of Texas and its employees and/or agents. U-Haul Holding Company, either alone and/or by and through its wholly owned, consolidated and/or affiliated subsidiaries, transacts business in the State of Texas and derives substantial revenue from business in the State of Texas. U-Haul Holding Company may be served by delivering summons and the complaint to its registered agent, CT Corp System, 701 S. Carson Street, Suite 200, Carson City, Nevada, 890701 and/or wherever found.

## II. SUBJECT MATTER JURISDICTION, PERSONAL JURISDICTION AND VENUE

2.1    Venue is proper under 28 U.S.C. §1390 and §1391 as the incident giving rise to the claim occurred in Mesquite, Texas, in Dallas County, Texas.

2.2    Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332 because the amount in controversy excluding costs, attorney fees, and punitive damages exceeds $75,000.00 and there is complete diversity between the parties.

## III. FACTS

3.1    On or about January 21, 2023, Plaintiffs rented a U-Haul truck and a U-Haul car hauler/trailer from "U-Haul Moving and Storage at Jim Miller Road" which is located at 7107 C F Hawn Freeway, Dallas Texas 75217.

3.2    Plaintiffs reserved the truck, from U-Haul, for a move they were making from Burleson, TX to Pompano Beach, FL and selected a truck size.

3.3    Upon arrival to the U-Haul facility, Plaintiffs were provided the keys to a vehicle assigned to them by U-Haul and had no input with regard to which of the vehicles in the U-Haul fleet they could use for their move.

3.4    Instead, Plaintiffs trusted U-Haul's employees and in fact relied on U-Haul's expertise to assign a suitable truck which would get them to their destination safely.

3.5    Before leaving the U-Haul parking lot, Plaintiffs were instructed by U-Haul to ensure that the fuel meter was correctly documented (by U-Haul) and to perform a walk-around inspection for any superficial/cosmetic damage to the vehicle selected by U-Haul.

3.6    Plaintiffs followed those instructions and Plaintiff Guillen Jr. slowly began reversing out of the parking space.

3.7    As the assigned U-Haul truck began to move backward, both Plaintiff's heard a loud squeaking noise coming from the front end of the truck and immediately notified the U-Haul employee who had given him the keys about the loud troubling sound coming from the vehicle.  "

3.8    The U-Haul employee responded "Don't worry about it. It's a truck and they all make those noises. It's fine to drive" or other words to that effect.

3.9    Again, Plaintiffs trusted and relied U-Haul's expertise and on the specific representation that the loud noise coming from the front driver-side tire area was normal because trucks "all make those noises."

3.10    Plaintiffs left the U-Haul location to begin loading the vehicle in preparation for their cross-country move to Florida.

3.11    After loading the truck U-Haul assigned, Plaintiffs returned to the facility so they could attach a trailer they had rented, from the same U-Haul reservation, to tow a small car they would be taking with them to Florida.

3.12    Again, Plaintiffs notified U-Haul that the truck assigned to them was making a very loud noise and that it was causing them concern.

3.13    Rather than taking the matter seriously or even inquiring further, the U-Haul employee dismissed Plaintiffs concerns and further instructed Plaintiffs to ignore the loud noise. The U-Haul employee further reassured them "Don't worry about it. All these trucks are inspected" or words to that effect.

3.14    Had U-Haul inspected the truck prior to assigning it to Plaintiff, as specifically represented by its employee, or even bothered to determine what was causing the loud noise, **U-Haul** knew or should have known that ignoring Plaintiffs' concerns and instructing Plaintiff to ignore the truck noise would put Plaintiffs and other persons driving on the same roadway in a dangerous situation.

3.15    After being assured the truck was fine by U-Haul, Plaintiffs continued on their trip.

GUILLEN –PLAINTIFF'S ORIGINAL COMPLAINT/AS/DD

3.16    Shortly thereafter, while traveling down Hwy 20 in Mesquite, Texas, Plaintiffs heard a loud bang that sounded like the front driver-side tire had blown out. Plaintiffs could see white smoke coming from the area where the sound had originated.

3.17    Suddenly, the truck began to violently shake and swerve out of control, tossing the Plaintiffs around inside the truck like rag dolls, causing both Plaintiffs to suffer various injuries described in more detail below.

3.18    Panicked, Plaintiff Guillen Sr. pressed down on the brakes to slow down the runaway U-Haul.

3.19    However, the brakes were not functioning, and the vehicle would not slow down. As the runaway U-Haul continued barreling down the highway, violently swaying and swerving across several lanes of traffic, Plaintiff Guillen Sr. fought to get the **U-Haul** truck under control while he and his son's bodies were being slammed around the cabin of the truck.

3.20    Fortunately, the truck did not flip over and there were no other vehicles on the road at that time. Plaintiff Guillen Sr. was able to regain control, as the truck ran out of momentum, and safely pulled it over to the side of the highway.

3.21    After Plaintiffs pulled the truck over to the side of the highway, they immediately contacted the U-Haul location and let them know what happened.

3.22    Immediately, U-Haul sent their mechanic to the location of the truck to see if he could fix the truck and get it back on the road.

3.23    The mechanic arrived and upon seeing the condition of the vehicle stated "Oh My God, I cannot let you drive this truck out of here. It's too dangerous to put it back on the road" or words to that effect.

3.24    Realizing the danger posed to anybody driving the truck, U-Haul's mechanic called for it to be towed back to the U-Haul location.

3.25    Plaintiffs never imagined a well-known and established company, like U-Haul, would put their lives in danger by providing a truck that was in such bad condition.

3.26    Plaintiffs were shaken up by the terrifying incident and were eventually switched into a different truck to continue their move to Florida.

3.27    Being violently tossed around like a rag doll inside the truck and slammed into the walls of the vehicle's cabin caused injuries to both Plaintiffs. **Plaintiff Guillen Sr**. suffered serious injuries to the neck, back and pain throughout his body. **Plaintiff Guillen, Sr.** sought medical treatment and underwent MRI scans because of the intense pain caused by the vehicle accident. MRI results determined that **Plaintiff Guillen Sr**. suffered multiple cervical and lumbar disc herniations as a result of the accident.

3.28    The violent shaking and jerking of the truck caused injuries to **Plaintiff Guillen Jr**., including but not limited to serious injuries to his neck, back, headaches and additional injuries throughout his body. **Plaintiff Guillen, Jr.** sought medical attention and underwent MRI scans because of the intense pain caused by the vehicle accident. MRI results determined that **Plaintiff Guillen Jr**. also suffered cervical and lumbar disc herniations because of the accident.

3.29    The negligence and conscious disregard for the risks created by assigning an unsuitable truck by the Defendants led to this accident which caused serious injuries to both Plaintiffs.

3.30    Determined to find answers, Plaintiffs retained Randy Wilkin, an ASE Master Mechanic and a Texas State Vehicle Inspector, to inspect the U-Haul truck and help determine the cause of the U-Haul truck's failure.

3.31    On March 14, 2023, Mr. Wilkin inspected the truck at the U-Haul Service Center in Ft. Worth, Texas. Mr. Wilken determined that the front wheel bearings and wheel hub were destroyed due to lack of lubrication which led to friction, which lead to heat, then to destruction. The poor maintenance of the vehicle was the proximate cause of its mechanical failure which led to injuries to Plaintiffs.

3.32    If the U-Haul employees had been properly trained and/or supervised in diagnosing and repairing dangerous mechanical issues on their trucks before allowing the public to rent it this incident might have been avoided.

3.33    Moreover, on information and belief, U-Haul failed to implement adequate safety policies/and or training with respect to pre-trip inspections of vehicles in its fleet and/or handling of Plaintiffs concerns regarding the loud noise which Plaintiffs relayed to U-Haul both times Plaintiffs were at the U-Haul facility.

## IV. CAUSES OF ACTION

### A.    NEGLIGENCE AS TO U-HAUL DEFENDANTS

4.1    Plaintiff incorporates by reference all the factual allegations contained in the preceding paragraphs. At all times relevant, Defendants U-Haul Company of Texas and U-Haul International, Inc. were the 'owner and operator' of the business assisting Plaintiffs with a rental vehicle. As such, these Defendants had a duty to exercise the degree of care that a reasonably careful entity would use to avoid harm to others under circumstances similar to those described herein. At all times relevant, Defendants had duties to ensure the vehicles being rented to Plaintiffs and to the general public were safe

and maintained correctly and to notify the Plaintiffs, as their customers, of any dangerous conditions of the vehicle.

4.2    Defendants U-Haul Company of Texas and U-Haul International, Inc. breached their duties owed to Plaintiffs. Defendants' negligence is enumerated in the following:

   a.    In failing to ensure the truck was safe and in good working condition;
   b.    In failing to properly maintain the proper maintenance of the truck;
   c.    In failing to warn Plaintiffs of the known danger;
   d.    In misrepresenting to Plaintiffs that the truck was ready to be driven away;
   e.    In failing to monitor service work being performed;
   f.    In failing to properly implement standard processes like employee training programs were in place;
   g.    Negligence in supervising the work and service performed on the truck.
   h.    Negligence in ensuring customer safety in that, they failed to ensure standard processes like employee training programs, and customer direction techniques were in place;
   i.    Negligent maintenance; and/or
   j.    Negligent operations.

4.3    Plaintiffs' injuries were proximately caused by Defendants' negligent, careless and reckless disregard of their duties.

**B.    R<span>ESPONDEAT</span> S<span>UPERIOR AND/OR</span> V<span>ICARIOUS</span> L<span>IABILITY AS TO</span> U-H<span>AUL</span> D<span>EFENDANTS</span>**

4.4    Plaintiff incorporates by reference all the factual allegations contained in preceding paragraphs. At the time of the occurrence in question and immediately prior thereto, Defendants were responsible for both failing to make the vehicle reasonably safe and failing to warn the Plaintiffs of the hazard with the vehicle via their employee and/or agent.

4.5    Upon information and belief, at all times pertinent to this Complaint, Defendants employees were acting within the course and scope of their employment and/or agency

with the U-Haul Defendants when he inspected the truck before renting it out to Plaintiffs on January 21, 2023, at the U-Haul Moving and Storage on Jim Miller Road.

4.6    Upon information and belief, at all times pertinent to this Complaint, Defendants' employees were acting within the course and scope of their employment and/or agency with the U-Haul Defendants when he failed to provide any warning regarding the subject vehicle.

4.7    Upon information and belief, at all times pertinent to this Complaint, Defendants' employees were acting in furtherance of the interests of the U-Haul Defendants.

4.8    Upon information and belief, at all times pertinent to this Complaint, Defendants' employees were inspecting, examining the subject vehicle with the express and/or implied permission of the U-Haul Defendants, and in furtherance of the business interests of the U-Haul Defendants.

4.9    Upon information and belief, at all times pertinent to this Complaint, Defendants' employees were inspecting and examining the subject vehicle with the express and/or implied permission of the U-Haul Defendants, and in furtherance of the business interests of the U-Haul Defendants.

4.10    U-Haul Company of Texas and U-Haul International, Inc. are therefore liable under the doctrines of *respondeat superior*, vicarious liability and/or statutory employer liability for the tortious acts and/or omissions of its employees and/or agents, and/or any other employee and/or agent as detailed above.

4.11    TheU-Haul Defendants are liable for causing and/or contributing to Plaintiffs' severe and permanent injuries and all damages that are recoverable under Texas law by Plaintiffs.

4.12    Plaintiffs invoke the doctrine of Respondeat Superior as against Defendants for the negligence of their employees, in one or more of the following respects:

    a.    negligent hiring;

    b.    negligent entrustment;

    c.    negligent training;

    d.    negligent supervision;

    e.    negligent retention;

    f.    negligent management;

    g.    negligent maintenance; and/or

    h.    negligent operations

## C.    GROSS NEGLIGENCE

4.13    Plaintiffs incorporate by reference all the factual allegations contained in the preceding paragraphs. As set out above, Defendants' actions constitute not only negligence, but also gross negligence. Defendants' negligent conduct was more than momentary thoughtlessness or inadvertence. Rather, Defendants' acts and omissions, when viewed objectively from the standpoint of the actor at the time of its occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendants had actual, subjective awareness of the risk involved but, nevertheless, proceeded in conscious indifference to the rights, safety, or welfare of the Plaintiffs. As a result, Defendants' acts and omissions constitute gross negligence, and the Plaintiffs are entitled to the recovery of exemplary damages.

4.14    By reason of all the above, the Plaintiffs suffered losses and damages in a sum within the jurisdictional limits of this Court, and for which Plaintiffs now sue.

4.15    Each and all of the above acts and/or omissions, whether taken singularly or in any combination constitute negligence, negligence per se and gross negligence which

proximately caused the injuries and other losses as specifically set forth herein, all of which Plaintiffs suffered and which Plaintiffs will continue to suffer in the future, if not for the remainder of their natural lives.

**D.    RES IPSA LOQUITOR**

4.16    Additionally, Defendant, U-Haul is liable under the theory of Res Ipsa Loquitor. The incident causing damage to Plaintiffs would not have happened unless Defendant was negligent.    Defendant had management and control over the property and circumstances causing Plaintiffs' injuries.  Moreover, the acts and omissions of Defendant were within the scope of their duty of care to Plaintiffs.

## V. DAMAGES

**A.    EXEMPLARY DAMAGES**

5.1    Defendants' acts or omissions described above involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Plaintiffs. Based on the facts stated herein, Plaintiffs request exemplary damages be awarded to Plaintiffs from Defendants.

**B.    GENERAL DAMAGES**

5.2    As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiffs were caused to suffer serious personal injuries and to incur the following damages:

   a.    Reasonable medical care and expenses in the past.
   b.    Reasonable and necessary medical care and expenses which will in all reasonable probability, be incurred in the future;
   c.    Physical pain in the past;
   d.    Physical pain which will, in all reasonable probability, occur in the future;

e. Mental anguish in the past;

f. Mental anguish which will, in all reasonable probability, occur in the future;

g. Loss of earnings in the past;

h. Loss of earning capacity which will, in all probability, be incurred in the future;

i. Disfigurement in the past;

j. Fear of future disease or condition; and

k. Cost of medical monitoring and prevention which will, in all reasonable probability, be incurred in the future.

5.3    Defendants' acts have been producing and proximate causes of damages to the Plaintiffs within the jurisdictional limits of this Court.

5.4    As a direct and proximate result of the accident and the negligent conduct of the Defendant, the Plaintiffs have suffered severe bodily injuries. The injuries have had a serious effect on the Plaintiffs health and well-being.

5.5    These specific injuries and their ill effects have, in turn, caused the Plaintiffs physical and mental condition to deteriorate generally and the specific injuries and ill effects alleged have caused and will, in all reasonable probability, cause the Plaintiffs to suffer consequences and ill effects of this deterioration throughout their bodies for a long time in the future, if not for the balance of their natural lives.

5.6    As a further result of the nature and consequences of their injuries, Plaintiffs suffered great physical and mental pain, physical suffering and mental anguish, and in all reasonable probability, will continue to suffer in this manner for a long time into the future, if not for the balance of their natural lives.

5.7    As a further result of all of the above, Plaintiffs have incurred expenses for medical care and attention. These expenses were incurred for the necessary care and treatment of the injuries resulting from the accident complained of. The charges are reasonable and

were the usual and customary charges made for such services in the County where they were incurred.

5.8    As a further result of the injuries sustained by the Plaintiffs, there is a reasonable probability that they will require further medical care and attention and will incur future reasonable and necessary expenses for their medical care and attention.

5.9    By reason of all of the above, Plaintiffs have suffered losses and damages in a sum within the jurisdictional limits of this Court for which they now file suit.

## VI. INTEREST

6.1    Plaintiffs further request both pre-judgment and post-judgment interest on all damages as allowed by law.

## VII. REQUEST FOR JURY TRIAL

7.1    Plaintiffs demand that this case be decided by a jury. Plaintiffs acknowledge payment of the required jury fee.

## VIII. PRESERVATION OF EVIDENCE/SPOLIATION NOTICE

8.1    Plaintiffs hereby request and demand that Defendants preserve and maintain all evidence pertaining to any claim or defense related to the incident made the basis of this lawsuit, or the damages resulting therefrom, including contracts, lists of donors, emails, minutes of meetings, memoranda, correspondence, financial records, diagrams, maps, photographs, videotapes, audiotapes, recordings, invoices, checks, files, facsimiles, voicemails, text messages, calendar entries, log books, or information related to the reference claim. Failure to maintain such items shall constitute a "spoliation" of the evidence.

## IX. PLAINTIFFS' DESIGNATED ELECTRONIC SERVICE EMAIL ADDRESS

9.1    Plaintiffs hereby request all parties and their counsels of record send all

documents served electronically on the undersigned to DeSouza Injury Lawyers designated service email: commercial@jfdlawfirm.com. Any documents emailed to any other address at the firm will not be considered as served. All general communication should be sent to the undersigned's direct email address, not the electronic service address.

## X.    JURY DEMAND

10.1    Pursuant to Rule 38 of the FEDERAL RULES OF CIVIL PROCEDURE, Plaintiffs hereby demand a trial by jury of all issues triable in this case.

### PRAYER FOR RELIED

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully request that Defendants be cited to appear and answer, and on final trial hereafter, the Plaintiffs have judgement against the Defendants, jointly and severally, in an amount within the jurisdictional limits of this Court, together with all pre-judgment and post-judgment interest allowed by law, costs of Court, and for such other further relief to which Plaintiffs may be justly entitled by law and equity, including but not limited to:

1. Physical pain sustained in the past;

2. Physical pain that, in reasonable probability, Plaintiffs will sustain in the future;

3. Mental anguish sustained in the past;

4. Mental anguish that, in reasonable probability, Plaintiff will sustain in the future;

5. Physical impairment sustained in the past;

6. Physical impairment that, in reasonable probability, Plaintiffs will sustain in the future;

7. Medical care expenses sustained in the past;

8. Medical care expenses that, in reasonable probability, Plaintiffs will sustain in the future;

9. Damage to their property;

10. Loss of use of their property;

11. Pre-judgment interest;

12. Post-judgment interest; and

13. Exemplary damages.

14. All other relief whether prescribed by law or in equity to which Plaintiffs are justly entitled to receive.

RESPECTFULLY SUBMITTED,

DESOUZA INJURY LAWYERS
4047 NACO PERRIN
SAN ANTONIO, TEXAS 78217
210/ 714-4215 – PHONE
210/496-0060 – FACSIMILE

BY: */S/ Adam Setra*
ADAM SETRA
STATE BAR NO.: 24115478
NDTX ADMITTED
adam@jfdlawfirm.com

*ATTORNEY FOR PLAINTIFFS*